plans and strategies.

70.    In October of 2003, Hearn and Byors entered into a written agreement and related documents pursuant to which Hearn purported to lend some $250,000.00 to Byors, secured by a security interest in 9,000 square feet of marble tile and a mortgage on the Robison Parcel adjoining the Swanton Red Quarry.  Byors acknowledged that he and/or his businesses owed Hearn $63,000.00 in interest because Hearn had not required performance under prior agreements of Byors to purchase the residence.  The parties agreed that Hearn would be paid $63,000.00 out of the loan proceeds as interest in full satisfaction of all consulting services and any other financial claims of Hearn, other than past due rent.  The parties also agreed that $30,000.00 in past due rent would be deducted from $120,000.00 Byors had deposited with Hearn toward the purchase price of the residence.

71.    For his part, Hearn agreed that he would not disclose any confidential information concerning the marble business unless such disclosure was authorized by VMIG or Byors.  The transaction was structured as a loan to Byors individually with the understanding that Byors would in turn loan the money either to VMIG or VMI, apparently to protect Hearn from potential liability for the claims of Byors' business creditors.  Also, by granting Hearn a security interest in the Robison Parcel, Byors apparently sought to protect that property from the claims of his business creditors, including defrauded investors.

72.    On information and belief, by the time the plaintiff was induced to invest, Hearn, by reason of his business dealings with and receipt of confidential business information from Byors, knew that the fair market value of the Swanton Red Quarry had been massively inflated, knew that there was no viable market for the sale of marble from the quarry (which remained inactive), knew that funds for the business was coming from members of the public induced to

invest through untrue statements and omissions of material fact, and further knew that such funds were being diverted for numerous unauthorized and improper purposes, including Hearn's receipt of substantial payments for the Byors' personal use of his residential property. Notwithstanding such knowledge, Hearn did nothing to warn investors or to otherwise disassociate himself from the fraud. At a minimum, Hearn recklessly and flagrantly disregarded the interests of the investing public and, by virtue of his security interest in the Robison Parcel, assisted Byors in his effort to shield that property from the claims of business creditors, including defrauded investors.

73.    Some of the money the plaintiff invested also may have been used to make note payments to Holly Cain and members of her family. It also is possible that some of the plaintiff's funds were used to finance the settlement of the undisclosed litigation with Hilda Ayer-Anderson and the Ayer Anderson Foundation. The plaintiff believes that Conant and Byors deemed these and payments to other investors as essential to the continuing concealment and operation of their "Ponzi" scheme.

Plaintiff Justifiably Relied On Defendants' Misstatements Of Material Fact

74.    On each occasion that she invested, the plaintiff justifiably relied on numerous misrepresentations of material fact including, without limitation, those described above. In addition, on each occasion that that the plaintiff invested, the defendants, for the purpose of inducing the plaintiff to invest, omitted to state facts necessary to make statements that were made not misleading. These omissions included, without limitation, those described above. But for the misstatements and omissions of material fact, the plaintiff would not have made any of her investments. As a direct and proximate result of the defendants' wrongful conduct, the plaintiff suffered the loss of those investments.

## V.  Claims For Relief

Claim One
Securities Act Section 12(a)(1)
(Against Defendants Byors, NCS and Rachel Byors)

75.     The plaintiff incorporates by reference the allegations contained in paragraphs 1 through 74 of this complaint as if fully set forth herein.

76.     Each of the promissory notes offered and sold to the plaintiff, together with the related investment documents, constituted a "security" within the meaning of section 2(1) of the Securities Act of 1933, 15 U.S.C. § 77(b)(1).

77.     None of the securities that were offered and sold to the plaintiff were registered, and none were exempt from registration pursuant to the provisions of the Securities Act of 1933.

78.     At all times alleged in this complaint, Byors, Conant and NCS, directly and indirectly, singly and in concert, made use of the means and instruments of transportation and communication in interstate commerce and of the mails to offer to sell and sell the securities to the plaintiff, and others, and carried or caused the securities to be carried through the mails or in interstate commerce by the means and instruments of transportation for the purpose of sale and delivery after sale.

79.     By reason of the foregoing, Byors and NCS, through the agency of Conant and otherwise, offered and sold securities to the plaintiff in violation of section 12(a)(1) of the Securities Act of 1933, 15 U.S.C. § 77*l*(a)(1), and are jointly and severally liable to the plaintiff. Defendant Rachel Byors also is jointly and severally liable to the plaintiff as a "control person" within the meaning of section 15 of the Securities Act of 1933, 15 U.S.C. § 77o.

80.     Accordingly, the plaintiff is entitled to recover the consideration paid for such securities, with interest thereon, less the amount of any income received thereon, together with

costs and all other applicable remedies.

Claim Two
Securities Act Section 12(a)(2)
(Against Defendants Byors, NCS and Rachel Byors)

81.    The plaintiff incorporates by reference the allegations contained in paragraphs 1 through 74 of this complaint as if fully set forth herein.

82.    Each of the promissory notes offered and sold to the plaintiff, together with the related investment documents, constituted a "security" within the meaning of section 2(1) of the Securities Act of 1933, 15 U.S.C. § 77(b)(1).

83.    At all times alleged in this complaint, Byors, Conant and NCS, directly and indirectly, singly and in concert, offered and sold securities to the plaintiff by the use of the means and instruments of transportation and communication in interstate commerce, or of the mails, by means of a prospectus and oral communications, which included untrue statements of material fact and omitted to state material facts necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading, the plaintiff not knowing of such untruths and omissions.

84.    By reason of the foregoing, Byors and NCS, through the agency of Conant and otherwise, offered and sold securities to the plaintiff in violation of section 12(a)(2) of the Securities Act of 1933, 15 U.S.C. § 77l(a)(2), and are jointly and severally liable to the plaintiff. Defendant Rachel Byors also is jointly and severally liable to the plaintiff for these violations as a "control person" within the meaning of section 15 of the Securities Act of 1933, 15 U.S.C. § 77o.

85.    Accordingly, the plaintiff is entitled to recover the consideration paid for such securities, with interest thereon, less the amount of any income received thereon, together with

Page 25 of 41

costs and all other applicable remedies.

**Claim Three**
**Exchange Act Section 10(b) And Rule 10b-5**
**(Against Defendants Byors, NCS and Rachel Byors)**

86.    The plaintiff incorporates by reference the allegations contained in paragraphs 1 through 74 of this complaint as if fully set forth herein.

87.    Each of the promissory notes offered and sold to the plaintiff, together with the related investment documents, constituted a "security" within the meaning of section 3(a)(10) of the Securities Exchange Act of 1934, 15 U.S.C. § 78(c)(a)(10).

88.    Byors, Conant and NCS, directly and indirectly, singly and in concert, in connection with the offer and sale of securities to the plaintiff, by use of the means or instruments of transportation or communication in interstate commerce, or the means or instrumentalities of interstate commerce, or the mails, (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact, or omitted to state material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, acts, practices and courses of business which operated as a fraud or deceit upon purchasers of securities, including the plaintiff.

89.    At all times relevant, Byors, Conant and NCS acted knowingly and for the purpose of inducing the plaintiff to purchase the securities with the requisite *scienter*, that is, the intent to defraud the plaintiff or reckless disregard for the misleading nature of their actions, misstatements and omissions.

90.    The plaintiff justifiably relied on and was misled by the deceptive devices and contrivances employed by the defendants, including without limitation their untrue statements and omissions of material fact.

Page 26 of 41

91.     As a direct and proximate result of the violations alleged herein, the plaintiff suffered actual loss on her investments.

92.     By reason of the foregoing, Byors and NCS, through the agency of Conant and otherwise, offered and sold securities to the plaintiff in violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5 thereunder, 17 C.F.R. §240.10b-5, and are jointly and severally liable to the plaintiff. Defendant Rachel Byors also is jointly and severally liable to the plaintiff for these violations as a "control person" within the meaning of section 20 of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a).

93.     Accordingly, the plaintiff is entitled to recover compensatory damages, with interest, together with costs and all other applicable remedies.

Claim Four
Vermont Securities Act Section 4205
(Against Defendants Byors, NCS and Rachel Byors)

94.     The plaintiff incorporates by reference the allegations contained in paragraphs 1 through 74 of this complaint as if fully set forth herein.

95.     Each of the promissory notes offered and sold to the plaintiff, together with the related investment documents, constituted a "security" within the meaning of section 4202a(10) of the Vermont Securities Act, 9 V.S.A. §§ 4201-4241.

96.     None of the securities that were offered and sold to the plaintiff were registered, and none were exempt from registration as required by section 4205 of the Vermont Securities Act.

97.     By reason of the foregoing, Byors and NCS, through the agency of Conant and otherwise, offered and sold securities to the plaintiff in violation of section 4205 and are jointly and severally liable to the plaintiff pursuant to section 4240(a) of the Vermont Securities Act.

Page 27 of 41

Defendant Rachel Byors also is jointly and severally liable to the plaintiff for these violations pursuant to the provisions of section 4240(e) of the Vermont Securities Act.

98.     Accordingly, the plaintiff is entitled to recover the consideration paid, together with interest at the legal rate from the date of payment, costs and reasonable attorneys' fees, less the amount of any income received on the securities, upon tender of the securities.  Notice of willingness to exchange the securities for the amount specified is hereby given.

Claim Five
Vermont Securities Act Section 4213
(Against Defendants Byors, NCS and Rachel Byors)

99.     The plaintiff incorporates by reference the allegations contained in paragraphs 1 through 74 of this complaint as if fully set forth herein.

100.    Each of the promissory notes offered and sold to the plaintiff, together with the related investment documents, constituted a "security" within the meaning of section 4202a(10) of the Vermont Securities Act, 9 V.S.A. §§ 4201-4241.

101.    Byors, NCS and Rachel Byors transacted business in Vermont as a broker-dealer or sales representative without being registered or exempt from registration as required by section 4213 of the Vermont Securities Act.

102.    By reason of the foregoing, Byors and NCS, through the agency of Conant and otherwise, offered and sold securities to the plaintiff in violation of section 4213 and are jointly and severally liable to the plaintiff pursuant to the provisions of section 4240(a) of the Vermont Securities Act.  Defendant Rachel Byors also is jointly and severally liable to the plaintiff for these violations pursuant to the provisions of section 4240(e) of the Vermont Securities Act.

103.    Accordingly, the plaintiff is entitled to recover the consideration paid, together with interest at the legal rate from the date of payment, costs and reasonable attorneys' fees less

the amount of any income received on the securities, upon tender of the securities. Notice of willingness to exchange the securities for the amount specified is hereby given.

Claim Six
Vermont Securities Act Section 4224a
<u>(Against Defendants Byors, NCS and Rachel Byors)</u>

104.    The plaintiff incorporates by reference the allegations contained in paragraphs 1 through __ of this complaint as if fully set forth herein.

105.    Each of the promissory notes offered and sold to the plaintiff, together with the related investment documents, constituted a "security" within the meaning of section 4202a(10) of the Vermont Securities Act, 9 V.S.A. §§ 4201-4241.

106.    Byors, Conant and NCS, directly and indirectly, singly and in concert, in connection with the offer and sale of securities to the plaintiff, (a) employed devices, schemes or artifices to defraud; (b) obtained money or property by means of, or otherwise made, untrue statements of material fact, or omitted to state material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, acts, practices and courses of business which operated or would operate as a fraud or deceit upon purchases of securities or other persons.

107.    At all times relevant, Byors, Conant and NCS acted with the requisite intent, that is a negligent failure to exercise due care with respect to the untrue statements and omissions of material fact.

108.    At all times relevant, Byors, Conant and NCS acted for the purpose of inducing reliance on the part of the plaintiff.

109.    The plaintiff justifiably relied on such untrue statements and omissions of material fact.

Page 29 of 41

110.   As a direct and proximate result of the violations alleged herein, the plaintiff suffered actual loss on her investments.

111.   By reason of the foregoing, Byors and NCS, through the agency of Conant and otherwise, offered and sold securities to the plaintiff in violation of section 4224a of the Vermont Securities Act and are jointly and severally liable to the plaintiff pursuant to the provisions of section 4240(a) of that Act.  Defendant Rachel Byors also is jointly and severally liable to the plaintiff for these violations pursuant to the provisions of section 4240(e) of the Act.

112.   Accordingly, the plaintiff is entitled to recover the consideration paid, together with interest at the legal rate from the date of payment, costs and reasonable attorneys' fees less the amount of any income received on the securities, upon tender of the securities.  Notice of willingness to exchange the securities for the amount specified is hereby given.

Claim Seven
Massachusetts Securities Act Section 301
<u>(Against Defendants Byors, NCS and Rachel Byors)</u>

113.   The plaintiff incorporates by reference the allegations contained in paragraphs 1 through 74 of this complaint as if fully set forth herein.

114.   Each of the promissory notes offered and sold to the plaintiff, together with the related investment documents, constituted a "security" within the meaning of the Massachusetts Securities Act, Massachusetts General Laws, Chapter 110A, section 401(k).

115.   None of the securities that were offered and sold to the plaintiff were registered, and none were exempt from registration as required by section 301 of the Massachusetts Securities Act.

116.   By reason of the foregoing, Byors and NCS, through the agency of Conant and otherwise, offered and sold securities to the plaintiff in violation of section 301 and are jointly

Page 30 of 41

and severally liable to the plaintiff pursuant to the provisions of section 410(a)(1) of the Massachusetts Securities Act. Defendant Rachel Byors also is jointly and severally liable to the plaintiff for these violations pursuant to the provisions of section 410(b) of the Massachusetts Securities Act.

117.   Accordingly, the plaintiff is entitled to recover the consideration paid for the securities, together with interest at six percent per year from the date of payment, costs, and reasonable attorney's fees, less the amount of any income received on the securities, upon tender of the securities. Notice of willingness to exchange the securities for the amount specified is hereby given.

Claim Eight
Massachusetts Securities Act Section 201
(Against Defendants Byors, NCS and Rachel Byors)

118.   The plaintiff incorporates by reference the allegations contained in paragraphs 1 through 74 of this complaint as if fully set forth herein.

119.   Each of the promissory notes offered and sold to the plaintiff, together with the related investment documents, constituted a "security" within the meaning of the Massachusetts Securities Act, Massachusetts General Laws, Chapter 110A, section 401(k).

120.   Byors, NCS and Rachel Byors transacted business in Vermont as a broker-dealer or agent without being registered as required by section 301 of the Massachusetts Securities Act.

121.   By reason of the foregoing, Byors and NCS, through the agency of Conant and otherwise, offered and sold securities to the plaintiff in violation of section 301 and are jointly and severally liable to the plaintiff pursuant to the provisions of section 410(a)(1) of the Massachusetts Securities Act. Defendant Rachel Byors also is jointly and severally liable to the plaintiff for these violations pursuant to the provisions of section 410(b) of the Massachusetts

Securities Act.

122.    Accordingly, the plaintiff is entitled to recover the consideration paid for the securities, together with interest at six percent per year from the date of payment, costs, and reasonable attorney's fees, less the amount of any income received on the securities, upon tender of the securities.  Notice of willingness to exchange the securities for the amount specified is hereby given.

Claim Nine
Massachusetts Securities Act Section 410(a)(2)
(Against Defendants Byors, NCS and Rachel Byors)

123.    The plaintiff incorporates by reference the allegations contained in paragraphs 1 through 74 of this complaint as if fully set forth herein.

124.    Each of the promissory notes offered and sold to the plaintiff, together with the related investment documents, constituted a "security" within the meaning of the Massachusetts Securities Act, Massachusetts General Laws, Chapter 110A, section 401(k).

125.    Byors, Conant and NCS, directly and indirectly, singly and in concert, offered and sold securities to the plaintiff by means of untrue statements of material fact and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, the plaintiff not knowing of the untruths and omissions.

126.    At all times relevant, Byors, Conant and NCS acted with the requisite intent, that is negligent failure to exercise due care with respect to the untrue statements and omissions of material fact.

127.    At all times relevant, Byors, Conant and NCS acted for the purpose of inducing reliance on the part of the plaintiff.

Page 32 of 41

128.   The plaintiff justifiably relied on such untrue statements and omissions of material fact.

129.   As a direct and proximate result of the violations alleged herein, the plaintiff suffered actual loss on her investments.

130.   By reason of the foregoing, Byors and NCS, through the agency of Conant and otherwise, offered and sold securities to the plaintiff in violation of section 410(a)(2) of the Massachusetts Securities Act and are jointly and severally liable to the plaintiff.  Defendant Rachel Byors also is jointly and severally liable to the plaintiff for these violations pursuant to the provisions of section 410(b) of the Massachusetts Securities Act.

131.   Accordingly, the plaintiff is entitled to recover the consideration paid for the securities, together with interest at six percent per year from the date of payment, costs, and reasonable attorney's fees, less the amount of any income received on the securities, upon tender of the securities.  Notice of willingness to exchange the securities for the amount specified is hereby given.

Claim Ten
RICO Section 1962(c)
(Against All Defendants)

132.   The plaintiff incorporates by reference the allegations contained in paragraphs 1 through 74 of this complaint as if fully set forth herein.

133.   The RICO Act makes it unlawful for any person associated with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprises' affairs through a pattern of racketeering activity.  18 U.S.C. § 1962(c).

134.   Any person injured in her business or property by reason of a violation of section

1962 of RICO may sue therefore in any appropriate United States district court and shall recover threefold the damages sustained and the cost of suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. 18 U.S.C. § 1964(c).

135.    The plaintiff asserts that the conduct of Conant, Byors and NCS, as alleged above, constituted fraud in the purchase or sale of securities within the meaning of section 1964(c) of the RICO Act. In the event this Court determines, for any reason, that such conduct did not constitute fraud in the purchase or sale of securities within the meaning of section 1964(c), the plaintiff asserts this alternative claim for relief pursuant to the provisions of the RICO Act.

136.    The marble businesses owned or controlled by Conant and Byors, including the operations at the Swanton Red Quarry, constituted an "Enterprise" within the meaning of 18 U.S.C. Sec. 1961(4) and will hereinafter be referred to as such.

137.    The Enterprise was engaged in, and its activities affected, interstate and foreign commerce.

138.    Each and every defendant in this action was a person employed by or associated with the Enterprise within the meaning of the RICO Act.

139.    Each of the defendants in this action conducted or participated, directly or indirectly, in the conduct of the Enterprises' affairs through a pattern of racketeering activity within the meaning of the RICO Act.

140.    The pattern of racketeering included, without limitation, numerous acts of mail fraud, in violation of 18 U.S.C. § 1341, and interstate transportation of property stolen or acquired by fraud, in violation of 18 U.S.C. §§ 2314 and 2315, extending over a period of time in excess of two years.

141.    The plaintiff was injured in her business or property by reason of the defendants' violations and is entitled to recover three times the damages sustained plus the cost of suit, including a reasonable attorney's fee, together with all other applicable remedies.

Claim Eleven
Fraud And Deceit
(Against Defendants Byors and NCS)

142.    The plaintiff incorporates by reference the allegations contained in paragraphs 1 through 74 of this complaint as if fully set forth herein.

143.    Byors, Conant and NCS made false representations of material fact and omitted to state material facts necessary to make statements that were made not misleading.

144.    Byors, Conant and NCS acted with knowledge of falsity and for the purpose of inducing the plaintiff to act in reliance thereon.

145.    The plaintiff justifiably relied on the representations as true and acted on them to her damage.

146.    The actions of Byors and NCS, through the agency of Conant and otherwise, constituted a fraud and deceit on the plaintiff.

147.    Accordingly, the plaintiff is entitled to recover compensatory and punitive damages, together with costs and all other applicable remedies.

Claim Twelve
Vermont Consumer Fraud Act
(Against Defendants Byors and NCS)

148.    The plaintiff incorporates by reference the allegations contained in paragraphs 1 through 74 of this complaint as if fully set forth herein.

149.    The actions of Byors and NCS, through the agency of Conant and otherwise, in offering and selling securities to the plaintiff constituted unfair and deceptive acts and practices

Page 35 of 41

within the meaning of the Vermont Consumer Fraud Act, 9 V.S.A. §§ 2451-2480n.

150.   Accordingly, the plaintiff is entitled to recover the amount of her damages, or the consideration or the value of the consideration given, and exemplary damages not exceeding three times the value of the consideration given, together with costs and all other applicable remedies, including attorney's fees.

Claim Thirteen
Action On The Notes
(Against Defendants Byors and NCS)

151.   The plaintiff incorporates by reference the allegations contained in paragraphs 1 through 74 of this complaint as if fully set forth herein.

152.   The promissory notes were not paid when due.

153.   The plaintiff thereafter demanded payment and each note remains unpaid.

154.   By reason of their wrongful conduct, through the agency of Conant and otherwise, Byors and NCS have waived or are estopped from raising the defense of usury and are therefore obligated to pay all principal and interest due pursuant to the written terms of the notes.

155.   In the alternative, Byors and NCS are liable to pay the plaintiff all principal and an equitable rate of interest.

156.   Accordingly, the plaintiff is entitled to judgment on the notes according to their terms, or in the alternative, for all principal and an equitable rate of interest, together with the costs of collection, including reasonable attorney's fees, and all other applicable remedies.

Claim Fourteen
Breach Of Contract
(Against Defendants Byors and NCS)

157.   The plaintiff incorporates by reference the allegations contained in paragraphs 1 through 74 of this complaint as if fully set forth herein.

Page 36 of 41

158.   The promissory notes offered and sold to the plaintiff, together with the related investment documents, constituted legally binding contracts among the parties thereto.

159.   Byors and NCS, through the agency of Conant and otherwise, breached various terms and conditions of the parties' contracts, including the implied covenant of good faith and fair dealing, which breaches included without limitation failure to pay the promissory notes according to their terms.

160.   As a direct result of the various breaches of the contracts, the plaintiff suffered actual damages.

161.   Accordingly, the plaintiff is entitled to recover actual damages, interest, costs and other all other applicable remedies.

Claim Fifteen
Breach Of Fiduciary Duty
(Against Defendants Byors and NCS)

162.   The plaintiff incorporates by reference the allegations contained in paragraphs 1 through 74 of this complaint as if fully set forth herein.

163.   The promissory notes offered and sold to the plaintiff, together with the related investment documents, constituted legally binding contracts among the parties thereto.

164.   The parties' contracts gave rise to fiduciary duties on the part of the defendants.

165.   Byors and NCS, through the agency of Conant and otherwise, breached their fiduciary obligations to the plaintiff by engaging in the conduct complained of herein.

166.   As a direct result of the various breaches of these fiduciary duties, the plaintiff suffered actual damages.

167.   Accordingly, the plaintiff is entitled to recover compensatory and punitive damages, together with costs and all other applicable remedies.

Page 37 of 41

Claim Sixteen
Conversion
(Against Defendants Byors and NCS)

168.    The plaintiff incorporates by reference the allegations contained in paragraphs 1 through 74 of this complaint as if fully set forth herein.

169.    Byors and NCS, through the agency of Conant and otherwise, converted the plaintiff's investment funds, as well as the marble blocks to which she held title.

170.    Accordingly, the plaintiff is entitled to compensatory damages for the fair value of the property wrongfully converted together with costs and all other applicable remedies, including punitive damages.

Claim Seventeen
Negligent Misrepresentation
(Against Defendants Byors and NCS)

171.    The plaintiff incorporates by reference the allegations contained in paragraphs 1 through 74 of this complaint as if fully set forth herein.

172.    Byors, Conant and NCS made untrue statements of material fact and omitted to state material facts necessary to make statements that were made not misleading.

173.    Byors, Conant and NCS knew or reasonably should have known that these statements and omissions were false and misleading and failed to exercise reasonable care or competence in obtaining or communicating the information.

174.    Byors, Conant and NCS intended to induce the plaintiff to rely on their misstatements and omissions of material fact.

175.    The plaintiff justifiably relied on such misstatements and omissions.

176.    As a direct and proximate result of the defendants' negligence, the plaintiff suffered loss on her investments.

177.    By reason of the foregoing, Byors and NCS, through the agency of Conant and otherwise, engaged in the tort of negligent misrepresentation and are jointly and severally liable to the plaintiff.

178.    Accordingly, the plaintiff is entitled to recover her actual damages, together with cost and all other applicable remedies.

Claim Eighteen
Civil Conspiracy
(Against All Defendants)

179.    The plaintiff incorporates by reference the allegations contained in paragraphs 1 through 74 of this complaint as if fully set forth herein.

180.    Each of the defendants agreed, combined and conspired to obtain financial benefits by defrauding members of the investing public, including the plaintiff.

181.    Each defendant acted with malice and intent to harm the investing public, including the plaintiff.

182.    Each defendant is jointly and severally liable for the wrongful acts of each and every co-conspirator including, without limitation, each and every overt act asserted in each and every claim for relief set forth in this complaint, the allegations of each of which are incorporated herein by reference.

183.    By reason of the conspiracy, the plaintiff suffered actual damages, including without limitation the loss of her investment principal, and the defendants are jointly and severally liable to the plaintiff for all compensatory and punitive damages, together with costs and all other applicable remedies.

Claim Nineteen
Restitution And Unjust Enrichment
(Against Defendants BMC and Hearn)

184.   The plaintiff incorporates by reference the allegations contained in paragraphs 1 through 74 of this complaint as if fully set forth herein.

185.   BMC and Hearn each received, without adequate consideration, substantial proceeds from the fraud alleged in this complaint.

186.   Each of these defendants was unjustly enriched by reason of the receipt of substantial proceeds from the fraud alleged in this complaint.

187.   It would be unjust, inequitable and unconscionable for the defendants to retain the unlawful proceeds of the fraud alleged herein.

188.   Each of these defendants is liable to make restitution to the plaintiff for the amount of sales proceeds by which each has been unjustly enriched as a result of the fraudulent scheme.

189.   In addition, it is just, proper and appropriate under principles of equity that the plaintiff be awarded an equitable lien against the real estate parcels identified herein that is superior to the interests of the defendants and that such real estate be attached and, if necessary, sold to satisfy the joint and several liability of each and every defendant named in this complaint.

## VI.  Relief Demanded

WHEREFORE, Plaintiff Elizabeth Bonnie Akerley demands interlocutory relief and final judgment against each of the named defendants, jointly and severally, as follows:

(A)   An Order of Approval authorizing a non-possessory prejudgment attachment of the real estate parcels identified herein to be held as security pending satisfaction any final judgment that may be entered in favor of the plaintiff;

(B)     Rescission of each and every investment transaction;

(C)     An award of compensatory damages in an amount determined pursuant to law;

(D)     An award of statutorily enhanced damages and/or exemplary damages in an amount determined pursuant to law;

(E)     An award of prejudgment and post-judgment interest;

(F)     The costs of suit, including reasonable attorney's fees and expenses; and

(G)     Such other and further relief as to the Court appears just and proper.

**<u>JURY DEMAND</u>**

The plaintiff demands trial by jury of all issues so triable.

Dated:  November 29, 2005

ELIZABETH BONNIE AKERLY

By:     Gregory S. Mertz, Esq.
        MERTZ, TALBOTT & SIMONDS, PLC
        126 College Street, Suite 305
        P.O. Box 1398
        Burlington VT 05402-1398
        Tel:  (802) 660-4800
        Fax:  (802) 651-5374
        gmertz@mtslegal.com

*Of Counsel:*

Robert S. Wolfe, Esq.
ROBERT WOLFE ASSOCIATES, P.C.
65 Middle Street
P. O. Box 1600
Gloucester MA 01930
Tel:  (978) 281-0190
Fax:  (978) 281-0589
Rwassociates@prodigy.net
Mass.BBO# 532500

Page 41 of 41