NOTE

Original Principal:
$325,000.00                                            January 26, 2004

    FOR VALUE RECEIVED, the undersigned, promises to pay ELIZABETH B. AKERLEY a/k/a/ BONNIE AKERLEY of Gloucester, Massachusetts (or in the alternative to Thorsen Anders Akerley and Leif Magnus Akerley in equal shares) the sum of THREE HUNDRED TWENTY-FIVE THOUSAND AND 00/100 ($325,000.00) DOLLARS together with interest at the rate of Seven and one-quarter(7.25%) percent per annum payable as follows:

    A. The sum of $1,963.54 representing interest only shall be paid beginning February 26, 2004 and a like sum shall be paid monthly thereafter on the 26th of each month.

    B. On July 26, 2004 the final payment of $326,963.54 shall be due and payable.

    C. An additional $100,000.00 shall also be paid to the holder on July 26, 2004.

This Note is personal to the Holder and Non-Assignable.

    THIS LOAN IS DUE AND PAYABLE BY JULY 26, 2004.  THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE MUST BE PAID AT THAT TIME.

    THE HOLDER IS UNDER NO OBLIGATION TO REFINANCE THIS LOAN AT THAT TIME.

    If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, we will pay a late charge to the Note Holder. The amount of the charge will be 3.00 % of any overdue payment. This late charge shall be paid promptly but only once on each late payment.

    At the option of the holder, this Note shall become immediately

/s/ Initials    /s/ Initials

**EXHIBIT**
COMPLAINT
7

due and payable without notice or demand upon the occurrence at any time of any of the following events of default (1) failure to pay in full the principal or interest due within twenty (20) day after Holder has sent the undersigned written notice of failure to pay on the date due under this Note, or default of any other liability due to Holder by the undersigned, or of any endorser or guarantor of any liability, obligation of undertaking, hereunder or otherwise, to Holder; (2) any breach in the covenants, conditions or agreements contained in any mortgage or other instrument given to secure this Note; (3) any statement, representation or warranty made by the undersigned or any indorser or guarantor of this Note being false in any material respect; (4) the death of the undersigned or of any indorser or guarantor hereof; (5) the institution by or against the undersigned or any indorser or guarantor hereof of any proceedings under the Bankruptcy Code or any other law in which the undersigned or any indorser or guarantor hereof of an assignment or trust mortgage for the benefit of creditors; or (6) the service upon Holder of a writ in which Holder is named as trustee of the undersigned or of any indorser or guarantor hereof.

The makers, endorsers, and guarantors or other parties to this Note, and each of them severally wave demand, notice and protest, and assent to any extension or postponement of the time payment or any other indulgence, to any substitution, exchange or release of collateral and/or to the addition or release of any other person primarily or secondarily liable.

In the event that legal proceedings are instituted to collect any amount due on this note, the undersigned agrees to pay to the holder, in addition to the amount of the unpaid balance and any interest that may be, all costs and expenses of such proceedings, including reasonable attorney's fees.

_____        _____
Initials                Initials

This note is to be secured by a chattel mortgage on inventory items of the borrower and a collateral assignment of certain life insurance policies.

Signed as an instrument under seal on the date first written above.

Signed and Sealed in the
presence of:

_____          _____
Witness                                   John H. Byers

_____          _____
Witness                                   Jon F. Conant

_____          NORTH COUNTRY STONE, INC.
Witness                                   (authorized signature)

CHATTEL MORTGAGE

January 2‾4, 2004

NORTH COUNTRY STONE, INC., a Vermont corporation with a place of business at 210 College Street, Burlington, Vermont, hereinafter called "Debtor", hereby grants to Elizabeth B. Akerley a/k/a Bonnie Akerley of Gloucester, Massachusetts, herein after called "Akerley", a security interest in the following described property:

All Material described in Exhibit A

together with all additions, accessions and substitutions thereto or therefor, herein called "collateral". Proceeds of collateral are also covered but this shall not be construed to mean that Akerley consents to any sale of such collateral other than in the normal course of business of Debtor.

This security interest is given to secure: (1) Payment of a note dated January 26, 2004 executed and delivered by debtor to Akerley in the principal sum of $325,000.00, payable as to principal and interest as therein provided.

Debtor expressly warrants and covenants:

Ownership Free of Encumbrances. Except for the security interest granted hereby, debtor now owns or will use the proceeds of the advances hereunder to become the owner of the collateral free from any prior lien, security interest or encumbrance, and debtor will defend the collateral against all claims and demands of all persons at any time claiming the same of any interest therein.

Financing Statements. No financing statement covering the collateral or any proceeds thereof is on file in any public office and debtor will join with Akerley in executing one or more financing statements in form satisfactory to Akerley.

Insurance. Debtor may insure the collateral with companies acceptable to Akerley against such casualties and in such amounts as Akerley shall require. All insurance policies shall be written for the benefit of debtor and Akerley as their interests may appear, and such policies or certificates evidencing the same shall be furnished to Akerley. All policies of insurance shall provide at least ten (10) days prior written notice of cancellation to McCarthy.

Maintenance. Debtor will keep the collateral in good condition and free from liens and other security interests, will pay promptly all taxes and assessments with respect thereto, will not use the collateral illegally or encumber the same and will not permit the collateral to be affixed to real or personally property without the prior written consent of Akerley. The collateral shall be kept at Debtor's quarry site at Barney Road, Swanton, VT or at

the processing site, GranitSlab Co., 240 Ursulines Road, Quebec, Canada. Finished products will be stored at either the processing site or at Debtor's warehouse in Williston, VT.

Reimbursement for Expenses. At is option, Akerley may discharge taxes, liens, security interests, or other encumbrances on the collateral and may pay of the repair of any damage to the collateral, the maintenance and preservation thereof and for insurance thereon. Debtor agrees to reimburse Akerley on demand for any payments so made and until such reimbursement, the amount of any such payment, with interest at ten (10%) per cent per annum from date of payment until reimbursement, shall be added to the indebtedness owed by debtor and shall be secured by this security agreement.

Change of Business Address or Location of Collateral. Debtor will immediately notify Akerley in writing of any change in debtor's business address and debtor will not permit any of the collateral to be removed from the location specified herein without the written consent of Akerley.

Debtor further warrants and covenants:

1.  The collateral covered by this agreement is to be used by debtor primarily for business other than farming operations.

2.  The collateral is now owned by the debtor.

3.  Debtor's mailing address is P.O. Box 850, 210 College Street, Burlington, VT 05401.

4.  The collateral will be kept as per above.

5.  Debtor's chief place of business is 210 College Street, Burlington, VT 05401.

Events of Default. Debtor shall be in default under this agreement upon the happening of any of the following events or conditions:

1.  Default in the payment or performance of any obligations, covenant or liability contained or referred to herein;

2.  Any warranty, representation or statement made or furnished to Akerley by or in behalf of debtor proves to have been false in any material respect when made or furnished;

3.  Any event which results in the acceleration of the maturity of this indebtedness of debtor to Akerly;

4.  Loss, theft, substantial damage, destruction, sale or encumbrances to or of any of the collateral, or the making of any levy, seizure or attachment thereof or thereon;

5. Any time Akerley believes that the prospect of payment of any indebtedness secured hereby or the performance of this agreement is impaired;

6. Death, dissolution, termination of existence, insolvency, business failure, appointment of a receiver for any part of the collateral, assignment for the benefit of creditors or the commencement of any proceeding under any bankruptcy or insolvency law by or against debtor or any guarantor or surety for debtor.

Remedies. Upon such default and at any time thereafter Akerley may declare all obligations secured hereby immediately due and payable and may proceed to enforce payment of the same and exercise any and all of the rights and remedies provided by the Uniform Commercial Code as well as all other rights and remedies possessed by Akerley. Akerley may require debtor to assemble the collateral and make it available to Akerly at any place to be designated by Akerly which is reasonable convenient to both parties. Unless the collateral is perishable or threatened to decline speedily in value or is a type customarily sold on a recognized market, Akerley will give debtor reasonable notice of the time and place of any public sale or any other intended disposition thereof is to be made. The requirements of reasonable notice shall be met if such notice is mailed, postage prepaid, to the address of debtor shown at the beginning of this agreement at least ten day before the time of the sale or disposition. Expenses of retaking, holding, preparing for sale, selling or the like shall include Akerely's reasonable attorneys' fees and legal expenses.

No waiver by Akerely of any default and the terms of this agreement shall be binding upon the heirs, executors, administrators, successors, and assigns of the parties hereto.

Signed and delivered the day and year first written above.

DEBTOR
NORTH COUNTRY STONE, INC., by

_____
Authorized signature

STATE OF VERMONT

CHITTENDEN COUNTY                    January 24, 2004

Then personally appeared John H. Byors, president of North Country Stone, Inc., before me, and acknowledged the forgoing to be the free act and deed of North Country Stone, Inc.

_____, Notary Public
My commission expires: 8/31/04

EXHIBIT A

| Black Block # | Cu. Ft. |
|---|---|
| 2-36 | 183.65 |
| 2-37 | 183.67 |
| 2-38 | 194.96 |
| 2-40 | 195.31 |
| 2-41 | 282.00 |
| 2-47 | 268.00 |
| 2-53 | 195.00 |
| 2-56 | 184.80 |
| 2-57 | 189.00 |
| 2-61 | 150.94 |
|  | 2027.33 |

Metropolitan Life Insurance Company
New England Life Insurance Company

**ASSIGNMENT OF LIFE INSURANCE POLICY AS COLLATERAL**
AG496

| Insured: Jon F. Conant | Assignee Name: Elizabeth B. Akerley |
|---|---|
| Policy Numbers: 38047209 | Assignee Address: 147 East Main Street |
|  | Gloucester, MA 01930 |

A. *For Value Received*, the undersigned hereby assign, transfer and set over to the above Assignee, its successors and assigns, (herein called the "Assignee") the above policy(ies) issued by the METROPOLITAN LIFE INSURANCE COMPANY / NEW ENGLAND LIFE INSURANCE COMPANY (herein called the "Insurer") and any supplementary contracts issued in connection therewith (said policy and contracts being herein called the "Policy") and all claims, option, privileges, rights, title and interest therein and thereunder (except as provided in Paragraph C hereof), subject to all the terms and conditions of the Policy and to all superior liens, if any, which the Insurer may have against the Policy. The undersigned by this instrument jointly and severally agree and the Assignee by the acceptance of this assignment agrees to the conditions and provisions herein set forth.

B. It is expressly agreed that, without detracting from the generality of the foregoing, the following specific rights are included in this assignment and pass by virtue hereof

 1. The sole right to collect from the Insurer the net proceeds of the Policy when it becomes a claim by death or maturity;

 2. The sole right to surrender the Policy and receive the surrender value thereof at any time provided by the terms of the Policy and at such other times as the Insurer may allow;

 3. The sole right to obtain one or more loans or advances on the Policy, either from the Insurer or, at any time from other persons, and to pledge or assign the Policy as security for such loans or advances;

 4. The sole right to collect and receive all distributions or shares of surplus, dividend deposits or additions to the Policy now or hereafter made or apportioned thereto, and to exercise any and all options contained in the Policy with respect thereto; provided, that unless and until the Assignee shall notify the Insurer in writing to the contrary, the distributions or shares of surplus, dividend deposits and additions shall continue on the plan in force at the time of this assignment; and

 5. The sole right to exercise all nonforfeiture rights permitted by the terms of the Policy or allowed by the Insurer and to receive all benefits and advantages derived therefrom.

C. It is expressly agreed that the following specific rights, so long as the Policy has not been surrendered, are reserved and excluded from this assignment and do not pass by virtue hereof:

 1. The right to collect from the Insurer any disability benefit payable in cash that does not reduce the amount of insurance;

 2. The right to designate and change the beneficiary;

 3. The right to elect any optional mode of settlement permitted by the Policy or allowed by the Insurer; but the reservation of these rights shall in no way impair the right of the Assignee to surrender the Policy completely with all its incidents or impair any other right of the Assignee hereunder, and any designation or change of beneficiary or election of a mode of settlement shall be made subject to this assignment and to the rights of the Assignee hereunder.

D. This assignment is made and the Policy is to be held as collateral security for any and all liabilities of the undersigned, or any of them, to the Assignee, either now existing or that may hereafter arise between any of the undersigned and the Assignee with respect to the above policy (all of which liabilities secured or to become secured are herein called "Liabilities").

E. The Assignee covenants and agrees with the undersigned as follows:

 1. That any balance of sums received hereunder from the Insurer remaining after payment of the then existing Liabilities, matured or unmatured, shall be paid by the Assignee to the persons entitled thereto under the terms of the Policy had this assignment not been executed;

 2. That the Assignee will not exercise either the right to surrender the Policy or (except for the purpose of paying premiums) the right to obtain policy loans from the Insurer, until there has been default in any of the Liabilities or a failure to pay any premiums when due, nor until twenty days after the Assignee shall have mailed, by first-class mail, to the undersigned at the addresses last supplied in writing to the Assignee specifically referring to this assignment, notice of intention to exercise such right; and

AG-496-01-web

3. That the Assignee will upon request forward without unreasonable delay to the Insurer the Policy for endorsement of any designation or change of beneficiary or any election of an optional mode of settlement;

F. The Insurer is hereby authorized to recognize the Assignee's claims to the rights hereunder without investigation the reason for any action taken by the Assignee, or the validity of the amount of the Liabilities or the existence of any default therein, or the giving of any notice under Paragraph E (2) above or otherwise, or the application to be made by the Assignee of any amounts to be paid to the Assignee. The sole signature of the Assignee shall be sufficient of the exercise of any rights under the Policy assigned hereby and the sole receipt of the Assignee for any sums received shall be a full discharge and release therefore to the Insurer. Checks for all or any part of the sums payable under the Policy and assigned herein, shall be drawn to the exclusive order of the Assignee if, when, and in such amounts as may be, requested by the Assignee.

G. The Assignee shall be under no obligation to pay any premium, or the principal of or interest on any loans or advance on the Policy whether or not obtained by the Assignee, or any other charges on the Policy, but any such amounts so paid by the Assignee from its own funds, shall become a part of the Liabilities hereby secured, shall be due immediately, and shall draw interest at a rate fixed by the Assignee from time to time not exceeding 6% per annum.

H. The exercise of any right, option, privilege or power given herein to the Assignee shall be at the option of the Assignee, but (except as restricted by Paragraph E (2) above) the Assignee may exercise any such right, option, privilege or power without notice to, or assent by, or affecting the liability of, or releasing any interest hereby assigned by the undersigned, or any of them.

I. The Assignee may take or release other security, may release any party primarily or secondarily liable for any of the Liabilities, may grant extensions, renewals or indulgences with respect to the Liabilities, or may apply to the Liabilities in such order as the Assignee shall determine, the proceeds of the Policy hereby assigned or any amount received on account of the Policy by the exercise of any right permitted under this assignment, without resorting or regard to other security.

J. In the event of any conflict between the provisions of this assignment and provisions of the note or other evidence of any Liability, with respect to the Policy or rights of collateral security therein, the provisions of this assignment shall prevail.

K. Each of the undersigned declares that no proceedings in bankruptcy are pending against him and that his property is not subject to any assignment for the benefit of creditors.

Signed and sealed this _____26th_____ day of ___January___ 20 _04_

_____
Witness

_____
Witness

_____
Owner sign here
_6A Middle Street, Gloucester, MA 01930_
Address

_____
Beneficiary
c/o 64 Middle Street, Gloucester, MA 01930
Address

AG-496-01-web

**Metropolitan Life Insurance Company**
**New England Life Insurance Company**

**ASSIGNMENT OF LIFE INSURANCE POLICY AS COLLATERAL**

Insured: John Byers

Policy Numbers: _____

**Assignee Information**

| Assignee's Name |
|---|
| Elizabeth B Akerley |

| SSN# |
|---|
| 029 70 4876 |

| Address Street | City | State | Zip Code | If Foreign Province Country |
|---|---|---|---|---|
| 147 E. Main St. | Gloucester | MA | 01930 | |

| Phone Number & Extension | E-Mail Address |
|---|---|
| (802) 953-8588 | |

A. For Value Received, the undersigned hereby assigns, transfers and sets over to the above Assignee, its successors and assigns, (herein called the "Assignee") the above policy(ies) issued by the METROPOLITAN LIFE INSURANCE COMPANY / NEW ENGLAND LIFE INSURANCE COMPANY (herein called the "Insurer") and any supplementary contracts issued in connection therewith (said policy and contracts being herein called the "Policy") and all claims, options, privileges, rights, title and interest therein and thereunder (except as provided in Paragraph C hereof), subject to all the terms and conditions of the Policy and to all superior liens, if any, which the Insurer may have against the Policy. The undersigned by this instrument jointly and severally agree and the Assignee by the acceptance of this assignment agrees to the conditions and provisions herein set forth.

B. It is expressly agreed that, without detracting from the generality of the foregoing, the following specific rights are included in this assignment and pass by virtue hereof:

  1. The sole right to collect from the Insurer the net proceeds of the Policy when it becomes a claim by death or maturity;

  2. The sole right to surrender the Policy and receive the surrender value thereof at any time provided by the terms of the Policy and at such other times as the Insurer may allow;

  3. The sole right to obtain one or more loans or advances on the Policy, either from the Insurer or, at any time from other persons, and to pledge or assign the Policy as security for such loans or advances;

  4. The sole right to collect and receive all distributions or shares of surplus, dividend deposits or additions to the Policy now or hereafter made or apportioned thereto, and to exercise any and all options contained in the Policy with respect thereto, provided, that unless and until the Assignee shall notify the Insurer in writing to the contrary, the distributions or shares of surplus, dividend deposits and additions shall continue on the plan in force at the time of this assignment;

  and

  5. The sole right to exercise all nonforfeiture rights permitted by the terms of the Policy or allowed by the Insurer and to receive all benefits and advantages derived therefrom.

C. It is expressly agreed that the following specific rights, so long as the Policy has not been surrendered, are reserved and excluded from this assignment and do not pass by virtue hereof:

  1. The right to collect from the Insurer any disability benefit payable in cash that does not reduce the amount of insurance;

  2. The right to designate and change the beneficiary;

  3. The right to elect any optional mode of settlement permitted by the Policy or allowed by the Insurer; but the reservation of these rights shall in no way impair the right of the Assignee to surrender the Policy completely with all its incidents or impair any other right of the Assignee hereunder, and any designation or change of beneficiary or election of a mode of settlement shall be made subject to this assignment and to the rights of the Assignee hereunder.

D. This assignment is made and the Policy is to be held as collateral security for any and all liabilities of the undersigned, or any of them, to the Assignee, either now existing or that may hereafter arise between any of the undersigned and the Assignee with respect to the above policy (all of which liabilities secured or to become secured are herein called "Liabilities").

Initial form here and sign on next page ——→  JB   1-24-04
                                          Owner's Initials    Date

NE-xxx-xx-xxxx                            Page 1 of 2, incomplete without page 2

E. The Assignee covenants and agrees with the undersigned as follows:

1. That any balance of sums received hereunder from the Insurer remaining after payment of the then existing Liabilities, matured or unmatured, shall be paid by the Assignee to the persons entitled thereto under the terms of the Policy had this assignment not been executed;

2. That the Assignee will not exercise either the right to surrender the Policy or (except for the purpose of paying premiums) the right to obtain policy loans from the Insurer, until there has been default in any of the Liabilities or a failure to pay any premiums when due, nor until twenty days after the Assignee shall have mailed, by first-class mail, to the undersigned at the addresses last supplied in writing to the Assignee specifically referring to this assignment, notice of intention to exercise such right; and

3. That the Assignee will upon request forward without unreasonable delay to the Insurer the Policy for endorsement of any designation or change of beneficiary or any election of an optional mode of settlement.

F. The Insurer is hereby authorized to recognize the Assignee's claims to the rights hereunder without investigating the reason for any action taken by the Assignee, or the validity of the amount of the Liabilities or the existence of any default therein, or the giving of any notice under Paragraph E (2) above or otherwise, or the application to be made by the Assignee of any amounts to be paid to the Assignee. The sole signature of the Assignee shall be sufficient of the exercise of any rights under the Policy assigned hereby and the sole receipt of the Assignee for any sums received shall be a full discharge and release therefore to the Insurer. Checks for all or any part of the sums payable under the Policy and assigned herein, shall be drawn to the exclusive order of the Assignee if, when, and to such extent as may be, requested by the Assignee.

G. The Assignee shall be under no obligation to pay any premium, or the principal of or interest on any loans or advances on the Policy whether or not obtained by the Assignee, or any other charges on the Policy, but any such amounts so paid by the Assignee from its own funds, shall become a part of the Liabilities hereby secured, shall be due immediately, and shall draw interest at a rate fixed by the Assignee from time to time not exceeding 6% per annum.

H. The exercise of any right, option, privilege or power given herein to the Assignee shall be at the option of the Assignee, but (except as restricted by Paragraph E (2) above) the Assignee may exercise any such right, option, privilege or power without notice to, or assent by, or affecting the liability of, or releasing any interest hereby assigned by the undersigned, or any of them.

I. The Assignee may take or release other security, may release any party primarily or secondarily liable for any of the Liabilities, may grant extensions, renewals or indulgences with respect to the Liabilities, or may apply to the Liabilities in such order as the Assignee shall determine, the proceeds of the Policy hereby assigned or any amount received on account of the Policy by the exercise of any right permitted under this assignment, without resorting or regard to other security.

J. In the event of any conflict between the provisions of this assignment and provisions of the note or other evidence of any Liability, with respect to the Policy or rights of collateral security therein, the provisions of this assignment shall prevail.

K. Each of the undersigned declares that no proceedings in bankruptcy are pending against him and that his property is not subject to any assignment for the benefit of creditors.

Signed and sealed this 23rd day of January, 2004

Signature of Witness: [signature]
Print Name: Peter Stevens

Owner sign here: [signature]
Print Name (First / Middle / Last / Suffix): John H. Byers

Owner Information:
Street: 210 College St.
City: Burlington, VT
Zip Code: 05401
Home Phone: ( )
Business Phone & Ext: (802) 316-6545
Country: USA

Signature of Witness: [signature]
Print Name: Peter Stevens

Beneficiary: Rachel Byers
Address: 18 Ledgewood Dr. Williston, VT 05495

AG-455 01 web    Page 2 of 2, incomplete without page 1