```
                   UNITED STATES DISTRICT COURT
                           FOR THE
                      DISTRICT OF VERMONT
```

| | |
|---|---|
| ELIZABETH BONNIE AKERLEY, | : |
| | : |
|     Plaintiff, | : |
| | : |
|         v. | :   Case No. 2:05-cv-314 |
| | : |
| NORTH COUNTRY STONE, INC., JOHN | : |
| BYORS, RACHEL BYORS, VERMONT | : |
| MARBLE INVESTORS GROUP, INC., | : |
| VERMONT MARBLE INTERNATIONAL, LLC, | : |
| BARNEY MARBLE COMPANY, INC. | : |
| and RICHARD HEARN, | : |
| | : |
|     Defendants. | : |

## MEMORANDUM OPINION and ORDER

In this suit in which Plaintiff Elizabeth Bonnie Akerley alleges that she was fraudulently induced to invest $615,000 in an abandoned marble quarry, she has moved for pre-judgment attachments to hold for satisfaction of any judgment she may recover the non-exempt real estate, goods and chattels, and other property of the defendants to the value of $1,000,000.  The defendants received notice of the motion, and of the hearing which took place January 4-6, 2006.  Upon consideration of the filings in this matter, the testimony and the arguments of counsel, the motion is granted in part and denied in part.

From Defendants John and Rachel Byors, Akerley seeks attachment of two parcels of real estate in Swanton, Vermont, and four vehicles, a 2004 Land Rover; a 2003 Hummer; a 2005 Chevy Tahoe; and a 2004 Mercedes S50.  From Defendant Vermont Marble International, LLC ("VMI"), Akerley seeks to attach several large

blocks of marble. From Defendant Barney Marble Company, Inc. ("Barney Marble"), Akerley seeks attachment of the marble quarry in Swanton. From Defendant Richard Hearn, Akerley seeks attachment of a residential property in Williston, Vermont.

I.  <u>Byors Attachments</u>

By letter dated December 16, 2005, the Court was informed that the Byors consented to non-possessory attachments of the two parcels of real estate, and that Akerley had agreed to drop her request for a possessory attachment of the Chevy Tahoe. At the hearing, Byors consented to attachments of the other three vehicles, but represented that the vehicles had been "turned in." On behalf of his companies and himself, Byors consented to possessory attachment of the marble blocks, and additional non-exempt personal property. The order of attachment is approved for non-possessory attachment of the Swanton acreage. The order of attachment is approved for possessory attachment of the marble blocks and other personal property. If the vehicles are located still titled to Byors, his wife or one of his companies, the Court will approve attachment of the vehicles.

II. <u>Barney Marble and Richard Hearn Attachments</u>

Akerley's complaint charges Barney Marble and Richard Hearn in three counts, with a RICO violation, with civil conspiracy and with unjust enrichment. According to the complaint, and the evidence adduced at the hearing, Barney Marble's involvement can

be summarized as follows.

Barney Marble, a Vermont corporation with its principal place of business in Proctor, holds title to the Swanton Red Quarry, site of a deposit of rare red marble. Oliver Danforth is the president of Barney Marble, and his brother-in-law Robert Ley is vice-president. Barney Marble bought the quarry in April 2000 from OMYA, Inc., the operator of several Vermont quarries. The purchase price was $75,000, negotiated down from an asking price of $100,000. At the time of purchase the quarry had been inactive for forty years, and did not have the state or local permits necessary to operate. Barney Marble anticipated extracting and selling red marble from the quarry, and hired a consultant professional geologist to coordinate obtaining the necessary permits.

Six weeks after Barney Marble bought the quarry, it granted John Byors an exclusive five-year option to purchase the quarry for $4,000,000. Barney Marble also agreed to supply Byors with all of the marble quarried from the Swanton quarry for five years, provided that Byors made a minimum purchase of $800,000 worth of material per year. Barney Marble would do the mining, extracting and shipping.

The option to purchase was to become null and void if Byors did not pay $200,000 to Barney Marble by January 1, 2001. The $200,000 was paid. On February 28, 2001, Byors and Barney Marble

replaced the supply contract with a written lease between Barney Marble and VMI, Byors' company, that authorized VMI to perform all mining operations at the quarry.

Although the Complaint alleges that neither Barney Marble nor VMI engaged in any significant mining activity at the Swanton Red Quarry, evidence was produced that Barney Marble, and later Byors, extracted marble from the quarry during 2001, 2002 and 2003.

According to Akerley, Barney Marble knew when it received the $200,000 for the option that the fair market value of the quarry was only $75,000. Akerley claims that Barney Marble knew that an inflated appraisal of $130,000,000 ("the Blais appraisal") would be used to entice members of the public to invest in the quarry, whose inflated purchase price of $4,000,000 would seem like a bargain. Barney Marble also allegedly knew that investor funds were not being used to buy quarrying equipment or to process marble. In response to questions from Akerley's counsel, posing as a potential investor, the president of Barney Marble conveyed the impression that Byors was a competent quarry operator and that the quarry had been actively worked as late as 2004.

Danforth and Ley testified that the contract with Byors was negotiated at arm's-length, and that they had no information about Byors' sources of funding or whether he had investors or

4

other creditors.  They were not involved in the preparation of the Blais appraisal, and had not seen it prior to this litigation.  The $4,000,000 price reflected the increase in value of an operational quarry as opposed to an abandoned one.

Hearn is a business consultant.  He is a citizen of Florida.  The Byors' Williston residence belongs to Hearn.  According to the complaint, Hearn was privy to confidential information concerning the marble quarry.  According to Hearn, as friend and landlord he had informal discussions from time to time concerning Byors' cash flow problems and his failure to keep any books on his business.  Byors told Hearn that he put his own money into the business, and showed him a letter from attorney Jon Conant in which Conant wrote that he had secured and sent to Byors $775,000 that was owed to Byors from his previous construction business.  Hearn learned that Byors had an outstanding loan with a 100% rate of interest, and again expressed concern that Byors had no books.

In October 2003, Hearn and Byors entered into a written agreement wherein Hearn agreed to lend $250,000 to Byors, secured by a security interest in 9,000 square feet of marble tile and a mortgage on one of the real estate parcels adjoining the Swanton quarry.  Byors acknowledged that he owed Hearn $63,000 in unpaid interest connected with the transfer of the Williston property to him, and the parties agreed that Hearn would be paid $63,000 out of the loan proceeds.  At Byors' request, Hearn agreed not to

disclose any confidential information concerning the marble business unless authorized to do so by Byors.

Akerley believes that by the time she was induced to invest in January 2003, Hearn knew that the fair market value of the Swanton Red Quarry had been massively inflated, knew that there was no viable market for the sale of marble from the quarry, knew that funds for the business were coming from the investors who were investing because they were being lied to, and knew that the funds were being diverted to various improper and unauthorized purposes, including Hearn's receipt of substantial payments for the Byors' use of his Williston property.  (Byors also made substantial improvements to Hearn's Williston property, including construction of a pool and a jacuzzi-gazebo.)

Hearn eventually sued the Byors in Chittenden County Superior Court to evict them from the Williston property, to collect back rent and to terminate their lease with option to purchase.  The Byors stipulated to vacate the premises by November 5, 2005.  As of the date of the hearing, the Byors continue to reside there.

Vermont Rule of Civil Procedure 4.1(b)(2)[1] provides that an order of approval for a writ of attachment may issue upon a finding by the court that "there is a reasonable likelihood that

---

[1]  Attachment in a civil action in federal court is governed by the law of the state in which the district court sits.  Fed. R. Civ. P. 64.

the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment over and above any liability insurance, bond, or other security shown by the defendant to be available to satisfy the judgment." V.R.C.P. 4.1(b)(2).

Thus Akerley must be able to show a reasonable likelihood that she will recover judgment. According to the Reporter's Notes to Rule 4.1, a finding of reasonable likelihood is "intended to be a realistic conclusion by the court on the basis of affidavits and other evidence presented at the hearing as to the actual probability of recovery by the plaintiff." V.R.C.P. 4.1 reporter's notes, 1973 amend. More than a mere finding that a plaintiff makes out a prima facie case or that there is probable ground to support her claim is required. *Id.* Given that "attachment is an extraordinary remedy created by statute in derogation of common law," *Brastex Corp. v. Allen Int'l, Inc.*, 702 F.2d 326, 332 (2d Cir. 1983) (construing New York statutory provision), Rule 4.1's reasonable likelihood requirement must be adhered to strictly and meticulously.

Akerley's evidence submitted at this early stage of her lawsuit does not permit the Court to conclude realistically that she will be able to recover from Barney Marble or Richard Hearn on theories of civil conspiracy, civil RICO or unjust enrichment. Presumably Akerley's theory of liability on civil conspiracy

involves proof that Barney Marble and/or Richard Hearn acted in concert with Byors in the behavior that gave rise to her other claims.  Although discovery may lead to evidence that either or both of them acted in concert with Byors to dupe her out of her money, the record to date does not demonstrate to the Court that Akerley has a reasonable likelihood of recovery on this count.

The credible evidence to date shows that Barney Marble bought an abandoned quarry with a deposit of valuable red marble at a bargain price.  It obtained the permits necessary to quarry the marble, and contracted with Byors first to supply him marble and later to sell him an operational quarry.  Akerley offered no credible evidence suggesting that Barney Marble entered into a conspiracy with Byors to defraud his creditors or investors.  At this point in the litigation, Akerley has failed to establish a reasonable likelihood of recovery on a theory that Barney Marble conspired with Byors to defraud her.

Similarly, Akerley has failed to establish a reasonable likelihood of recovery on a theory that Hearn conspired with Byors to defraud her.  Hearn was Byors' landlord and occasional confidant/advisor.  Hearn was primarily concerned about protecting his creditor relationship with Byors, by securing his rental payments and making sure that his loan was adequately collateralized.  The credible evidence elicited thus far fails to show that Hearn knew or should have known of Byors' sources of

funds or that Byors was defrauding his investors, let alone that he participated in a scheme to defraud them.

For Akerley to recover on a civil RICO action against Barney Marble or Richard Hearn, she must allege and prove, among other things, that Barney Marble and/or Richard Hearn conducted an enterprise through a pattern of racketeering activity.  *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004).  Racketeering activity must consist of certain specified predicate acts, and to constitute a pattern, there must be two or more such acts "which 'amount to or pose a threat of continued criminal activity.'"  *Id.* (quoting *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999)).  To prove the existence of a racketeering enterprise, a plaintiff must present "evidence of an ongoing organization, formal or informal, and . . . that the various associates function as a continuing unit."  *DeFalco v. Bernas*, 244 F.3d 286, 307 (2d Cir. 2001).

The complaint has not alleged Barney Marble's or Richard Hearn's predicate acts.  There is no evidence of an ongoing organization that includes either Barney Marble or Richard Hearn.  And, as Plaintiff's counsel acknowledged, the Private Securities Litigation Reform Act's elimination of private actions based on securities fraud has rendered her cause of action problematic.

The equitable doctrine of unjust enrichment[2] rests upon the principle that a person may not enrich himself unjustly at the expense of another.  "[W]hether there is unjust enrichment may not be determined from a limited inquiry confined to an isolated transaction.  It must be a realistic determination based on a broad view of the human setting involved."  *Legault v. Legault*, 142 Vt. 525, 531, 459 A.2d 980, 984 (1983).

It is possible that prejudgment attachment simply isn't appropriate when the theory of recovery is unjust enrichment, given the necessity of looking at the totality of the circumstances.  But the Court needn't make such a dramatic ruling in this case.  Suffice it to conclude that Akerley's evidence at this stage of the litigation fails to show a likelihood of recovery on the theory that Barney Marble or Richard Hearn wrongfully retain property or proceeds that rightfully should belong to her.

Accordingly, attachment of the Swanton Red Quarry and the Williston residence is not approved.

For the reasons stated above, attachment of two parcels of land in Swanton, Vermont is approved.  Possessory attachment of the marble blocks and other non-exempt personal property is

---

[2] "Unjust enrichment" and "restitution" are used interchangeably in Vermont case law.  *Center v. Mad River Corp.*, 151 Vt. 408, 411 n.2, 561 A.2d 90, 92 n.2 (1989).

approved.  If the vehicles are located, titled to the Byors or any of their companies, the Court will approve attachment of the vehicles.  Attachment of the Swanton Red Quarry owned by Barney Marble and the Williston residential property owned by Hearn is not approved.

Dated at Burlington, Vermont this 10th day of January, 2006.

<u>/s/ William K. Sessions III</u>
William K. Sessions III
Chief Judge